**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBIN MANIGAULT, | : |
| Plaintiff | : |
| | : |
| v. | : CIVIL ACTION NO. _____ |
| | : JURY TRIAL DEMANDED |
| AVENTURA AT PEMBROOKE, LLC | : |
| And AVENTURA HEALTH GROUP, LLC  and | : |
| CCP SENIOR HOLDINGS, LLC, | : |
| Defendants | : |

**COMPLAINT**

Robin Manigault ("Plaintiff"), by and through undersigned counsel, Edward Bigham, Esquire,

brings this wrongful termination action against Defendants, Aventura at Pembrooke, LLC,

Aventura Healthcare Group and CCP Holdings, LLC ("Defendants") and alleges as follows:

INTRODUCTION

1.      This action arises under the Age Discrimination in Employment Act, 29 U.S.C. §§

621–634 *et seq*. ("ADEA"), which, among other things, prohibits employment

discrimination of individuals over the age of forty (40) and retaliation relating to claims

of unlawful conduct.

2.      This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et

seq*. ("Civil Rights Act"), which, among other things, prohibits discrimination,

harassment, hostile work environment and retaliation based on sex, race and religion.

3.      This action arises under the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*.,

("PHRA") which, among other things, prohibits discrimination, harassment, hostile work

environment, retaliation and aiding or abetting unlawful discriminatory practice based on

age, sex, race and religion.

## PARTIES

4.    Plaintiff, Robin Manigault, is an adult individual residing at 1518 Manley Road, A34, West Chester, Pennsylvania 19382.

5.    Defendant, Aventura at Pembrooke, LLC, is a Pennsylvania limited liability company doing business at 1130 West Chester Pike, West Chester, Pennsylvania 19382.

6.    Defendant, Aventura Health Group, LLC is a Pennsylvania limited liability company doing business at 1130 West Chester Pike, West Chester, Pennsylvania 19382.

7.    Defendant, CCP Senior Holdings, LLC, is a Delaware limited liability company doing business at 1130 West Chester Pike, West Chester, Pennsylvania 19382.

8.    At all relevant times, Defendants owned, operated, maintained, managed and controlled a skilled, inpatient, nursing, rehabilitation and residential care facility known as Aventura Pembrooke located at 1130 West Chester Pike, West Chester, Pennsylvania 19382 ("Aventura Pembrooke")

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal statutes, including the ADEA and Civil Rights Act.

10.    This Court has subject matter jurisdiction over state PHRA claims pursuant to 28 U.S.C. 1367 because the state claims arise under the same case and controversy as Plaintiff's federal claims under the ADEA and Civil Rights Act.

11.    Personal jurisdiction is proper because Defendants conduct business and Plaintiff was employed at 1130 West Chester Pike, West Chester, Pennsylvania 19382, where the unlawful conduct occurred.

12.    Venue is proper under 28 U.S.C. § 1391(b) because Defendants regularly conduct

business and Plaintiff was employed at 1130 West Chester Pike, West Chester,

Pennsylvania 19382, where the unlawful conduct occurred.

### ADMINISTRATIVE PROCESS

13.    Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment

Opportunity Commission ("EEOC") on July 24, 2025, under Charge No. 530-2025-

03752, and contemporaneously with the Pennsylvania Human Relations Commission

("PHRC").

14.    Plaintiff received a Notice of Right to Sue issued by the EEOC dated December 18,

2025.

15.    Plaintiff has exhausted all administrative remedies for actions under the ADEA, Civil

Rights Act, and the PHRA

### COMMON FACTUAL AND LEGAL ALLEGATIONS

16.    Plaintiff is a black, sixty-one-year-old (61), non-Jewish female individual hired as

Human Resources Director at Aventura Pembrooke by Defendants' predecessor,

Reliance Senior Care, on October 14, 2014.

17.    Plaintiff was recognized and trusted in her position, evidenced by longevity with the

company and the leadership role she fulfilled as follows:

a.    Facilitated acquisition of Aventura Pembrooke by Aventura Health Group in

December 2018;

b.    Successfully led Aventura Pembrooke throughout her tenure despite extreme

leadership turnover (over 20 different Administrators and 15 different Directors

of Nursing); and

      c.  Ensured efficient and effective staffing management for over ten years without performance issues.

18.    Aventura Pembrooke was acquired by Aventura Health Group and CCP Senior Holdings, LLC in December 2018 ("Acquisition").

19.    Plaintiff noticed an immediate change in her interactions with Defendants as compared to its predecessor, Reliance Senior Care, after the Acquisition including:

      a.  Lack of support in decision making;

      b.  Strained and ineffective communication; and

      c.  Receipt of her first disciplinary warning in retaliation for truthful testimony she provided in a wrongful termination lawsuit against the company, Greenidge v. Aventura in 2021/2022.

20.    After the Acquisition, Plaintiff noticed management within Defendant organizations were connected either by family, friends or neighbors, all sharing the same religious and cultural backgrounds which she did not share as a black, non-Jewish woman.

21.    In April of 2024, Defendants hired a new Director of Nursing, Jessica Cunningham, with no prior experience as a Director of Nursing ("Cunningham").

22.    Immediately following her hire, Cunningham targeted Plaintiff because of her age, sex, religion and race with extreme, pervasive and unrelenting harassment, including undermining Plaintiff's position as Director of Human Resources; directing staff to report human resources issues to Cunningham and not to Plaintiff; spreading rumors to tarnish Plaintiff's reputation; and promoting a general distrust of Plaintiff among staff.

23.    Cunningham's pervasive harassing and hostile conduct was not limited to Plaintiff as a target.

24.   Cunningham intimidated, threatened and harassed new hires and staff, leading to the resignation of several staff members and termination of two new facility Administrators between April and December 2024.

25.   In December of 2024, Defendants hired Shlomine (Saul) Kleiner ("Kleiner"), a Jewish male in his early 20s, neighbor and friend of Aventura Health Group's Corporate HR Director, Eric Zucker, as Administrator at Aventura Pembrooke.

26.   Kleiner lacked experience and general understanding of staffing, basic facility operations and other skills necessary to lead and manage the administration and operation of Aventura Pembrooke.

27.   Kleiner, a resident of Toms River, New Jersey, was first licensed as a Nursing Home Administrator in the State of Pennsylvania on October 15, 2024, just over one month before he began service as Administrator at Aventura Pembrooke.

28.   Kleiner quickly aligned with Cunningham, exposing his lack of experience by completely deferring to Cunningham for guidance on how to run Aventura Pembrooke.

29.   Kleiner immediately accepted Cunningham's purposely skewed and false assessment of Plaintiff's job performance without question, despite Cunninghams short tenure at the facility, lack of experience as a Director of Nursing, and Plaintiff's proven ten-year success in her role.

30.   Kleiner participated in, facilitated, perpetuated and aided and abetted Cunningham's campaign of manipulation, harassment, hostility, discrimination and retaliation against Plaintiff and other employees at Aventura Pembrooke.

31.    As Human Resources Director, Plaintiff regularly received complaints from staff regarding matters occurring within Aventura Pembrooke, including complaints about Cunningham's unlawful conduct.

32.    Prior to Kleiner's arrival, Plaintiff received a complaint from Aventura Pembrooke Food Services Director, Tyrone, detailing Cunningham's harassing treatment of him, including the fabrication of allegations of drinking on the job, discriminating against him because of his race and status in drug and alcohol recovery, and in retaliation for a disagreement he had with Cunningham.

33.    After Kleiner's arrival, Plaintiff received a complaint from Amanda Lyons, Aventura Pembrooke scheduler, that Cunningham was targeting and harassing her based on her sex and perceived romantic interest in a male employee with whom Cunningham was romantically involved.

34.    Plaintiff timely advised Kleiner of these employee complaints and he declined to authorize investigation.

35.    Shortly after beginning in his role, in or about January 2025, Kleiner implemented an "Inclement Weather Policy," notifying staff that they were not allowed to take off for bad weather.

36.    Kleiner required each employee to sign the Inclement Weather Policy.

37.    After implementation of the inclement weather policy, and without Plaintiff's knowledge as Human Resources Director, Kleiner reprimanded and suspended Plaintiff's direct report, Felica Mayo, a sixty plus (60+) year old receptionist, for three days without pay for refusing to sign the Inclement Weather Policy.

38.  Kleiner did not discipline any younger employees who refused to sign the Inclement Weather Policy.

39.  Plaintiff expressed her concern to Kleiner that this conduct may constitute age discrimination and put Aventura Pembrooke at risk of litigation.

40.  Plaintiff received additional complaints and reports from staff regarding Cunningham, including that she was engaged in sexual relations with multiple male employees during working hours, resulting in Cunningham becoming pregnant.

41.  These complaints further alleged that Cunningham was actively discriminating and retaliating against any female employee she deemed to be a threat to her relationships with the male employees she was romantically involved with, including reporting a female nurse, Kayla, to the nursing licensure board for a false and unsubstantiated allegation.

42.  Plaintiff reported these complaints to Kleiner as she was required to do before investigating.

43.  Instead of supporting an appropriate investigation of the serious staff complaints of unlawful conduct by Cunningham, Kleiner inappropriately shared this information with Cunningham.

44.  As a result of Kleiner disclosing this information to Cunningham, Cunningham and Kleiner retaliated against Plaintiff with increased harassment and hostility, ultimately leading to Plaintiff's termination.

45.  On February 6, 2025, Plaintiff texted Kleiner indicating her intent to file a harassment complaint against Cunningham for the unlawful behavior she inflicted on Plaintiff and others within the facility.

46.    Five business days later, on February 13, 2025, as Plaintiff was gathering facts and evidence for a formal complaint against Cunningham, Kleiner abruptly and wrongfully terminated her employment stating, "I've been here for thirty (30) days, and you don't get along with nursing, so I have to fire you."

47.    Aside from one warning in retaliation for providing truthful testimony in the case of Greenidge v. Aventura in 2021/2022, Plaintiff had no verbal or written warnings, performance improvement plans or other formal disciplinary actions on record leading up to or supporting her termination.

48.    Cunningham's employment was terminated shortly after Plaintiff was terminated.

49.    At all relevant times, Kleiner and Cunningham were employees, servants, actual or apparent agents of Defendants.

50.    At all relevant times, Defendants had the right to and did control and direct the manner and means by which their employees, including Kleiner and Cunningham, performed their job duties.

51.    At all relevant times Defendants controlled the hiring and termination of Administrators and Directors of Nursing within Aventura Pembrooke.

52.    At all relevant times, employees Defendants, including Kleiner and Cunningham, were acting within the course and scope of their employment or agency with Defendants.

53.     By reason of employment and agency relationships, Defendants are vicariously liable under the theory of *respondeat superior,* for all actions and inactions of their employees and agents, including Kleiner and Cunningham.

**COUNT I**
Age Discrimination in Employment Act
Discrimination and Retaliation
Plaintiff v. All Defendants

54.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth fully at length.

55.    At all relevant times, Plaintiff was an adult individual over the age of forty (40).

56.    At all relevant times, Plaintiff was a member of a protected class under the ADEA.

57.    At all relevant times, Plaintiff was qualified and had a ten-year demonstrated work history of success in her position as Human Resources Director at Aventura Pembrooke.

58.    At all relevant times, Felicia Mayo was a receptionist at Aventura Pembrooke and over the age of forty (40) ("Mayo").

59.    At all relevant times Mayo was a member of a protected class under the ADEA.

60.    At all relevant times, Mayo was qualified in her position as a receptionist at Aventura Pembrooke.

61.    Defendants, by and through their employees and agents, including Kleiner and Cunningham, discriminated against Plaintiff because of her age and because she reported unlawful conduct in violation of the ADEA by:

   a.    Enforcing policies and disciplining employees over the age of forty (40) for violations when other employees under forty (40) were not disciplined for the same infractions, including Plaintiff and Mayo;

   b.    Retaliating against Plaintiff for reporting a suspected violation of the ADEA involving disciplinary action against Mayo for failure to sign the Inclement Weather Policy and not disciplining others under the age of forty (40);

    c.  Subjecting Plaintiff to objectively severe and pervasive harassing treatment and hostile work conditions because of her age;

    d.  Requiring Plaintiff to issue unnecessary and excessive disciplinary action against staff, including written warnings for minor infractions, to turn staff against Plaintiff and to encourage staff to support and participate in Defendant's unlawful discrimination against and harassment of Plaintiff because of her age;

    e.  Telling staff that management was "working on getting her [Plaintiff's] ass outta there";

    f.  Terminating Plaintiff to hire a younger replacement, under the age of forty (40); and

    g.  Consistently seeking to retain and hire staff under the age of forty (40) through discriminatory employment practices.

62.    Defendants' retaliation against Plaintiff for her reports of unlawful age discrimination included:

    a.  Significantly increasing scrutiny over her work;

    b.  Harassing Plaintiff with threats of disciplinary action and termination;

    c.  Subjecting Plaintiff to harassment and extreme, hostile working conditions;

    d.  Telling staff that management was "working on getting her [Plaintiff's] ass outta there";

    e.  Excluding her from staff Human Resources matters that were her responsibility, including granting staff raises without Plaintiff's knowledge and disciplining staff without Plaintiff's knowledge or consultation;

    f.  Withholding resources necessary for Plaintiff to do her job;

g.  Excluding Plaintiff from meetings and issues germane to her position as Director of Human Resources;

h.  Falsely and maliciously reporting Plaintiff to Zucker and Aventura's corporate office for fraudulently paying bonuses to employees and stealing from the company when those bonuses were historically part of contractual, Union-based compensation;

i.  Colluding with Cunningham to intimidate Plaintiff into quitting;

j.  Colluding with Cunningham to fabricate pretextual issues with Plaintiff's performance to justify termination; and

k.  Terminating Plaintiff's employment.

63.  The proximal timeline of Plaintiff's employment and events after Plaintiff began complaining of discriminatory, harassing and retaliatory creates the inference of pretext and retaliation as follows:

a.  October 14, 2014 – Plaintiff begins employment as Director of Human Resources at Aventura Pembrooke;

b.  Plaintiff enjoyed over ten years of success in her position as Director of HR at Aventura Pembrooke without disciplinary record, except a retaliatory warning issued by Aventura for Plaintiff's truthful testimony in the case of Greenidge vs. Aventura in 2021/2022;

c.  Summer/Fall 2018 – Plaintiff successfully led the Acquisition;

d.  December 2018 – Aventura Health Group buys Aventura Pembrooke;

e.  October 2014 – April 2024 – 20+ Administrator changes and 15+ Director of Nursing changes at Aventura Pembrooke;

    f.   April 2024 – Cunningham hired as Director of Nursing of Aventura Pembrooke;

    g.   December 2024 – Kleiner hired as Administrator of Aventura Pembrooke;

    h.   April 2024 – January 2025 – Plaintiff receives numerous reports from staff of Cunningham's unlawful conduct and experiences her own harassment and discrimination from Cunningham;

    i.   December 2024 – February 2025 – Plaintiff makes numerous reports to Kleiner of allegations from employees and herself of Cunningham's unlawful conduct;

    j.   February 6, 2025, Plaintiff advises Kleiner she intends to file a complaint against Cunningham for her unlawful conduct; and

    k.   February 13, 2025, Kleiner fires Plaintiff stating: "I've been here for thirty (30) days, and you don't get along with nursing, so I have to fire you."

64.    The discriminatory, harassing and retaliatory treatment of Plaintiff was because of her age and did not occur with other employees under the age of forty (40).

65.    The harassment and hostile work environment were objectively severe and pervasive enough to alter the terms, conditions, and privileges of Plaintiff's employment, ultimately resulting in her termination.

66.    Defendants maintain written and informal policies and procedures governing attendance, disciplinary procedure, inclement weather, discrimination and harassment.

67.    These policies and procedures are facially neutral and apply to all employees, regardless of age.

68.    In practice, Defendants, by and through their employees, including Kleiner and Cunningham, applied and enforced these policies in a discriminatory, biased and disparate manner against individuals over the age of forty (40).

69.   Defendants policies prohibiting age discrimination and its process around adjudicating grievances and complaints under those policies are designed and applied in a manner that is: (i) discriminatory; (ii) disproportionately harmful to complainants in protected classes; and (iii) designed specifically to protect the Defendants from liability, not protect its employees from unlawful conduct as they were seemingly intended on their face.

70.   For example, when Plaintiff brought her concerns of age discrimination to Kleiner, he dismissed her concerns and proceeded with the unlawful, discriminatory discipline of Mayo for not signing the Inclement Weather Policy because she was an easy target due to her age.

71.   Defendants' actions by and through their employees, Kleiner and Cunningham, were intentional, willful, malicious, and/or taken with reckless indifference to Plaintiff's statutorily protected rights under the ADEA.

72.   Kleiner served as Plaintiff's boss for just over thirty (30) days when he terminated her without cause and despite her successful ten-year career at Adventure Pembrooke, leading to the strong inference that his reasons for termination were pretextual and but for her age she would not have been terminated.

73.   Defendants' intent and objective, by and through their employee and agent, Kleiner's actions, focused on intimidating and preventing Plaintiff from pursuing age discrimination complaints and reporting pervasive, discriminatory, harassing and unlawful behavior, not protecting Plaintiff and the staff at Aventura Pembrooke.

74.   At all relevant times, Defendants, by and through their employees and agents, including Kleiner, were or should have been aware of complaints of unlawful conduct through repeated reports by Plaintiff and other employees.

75. At all relevant times, Defendants failed to take prompt, adequate or effective action to prevent discrimination against Plaintiff because of her age.

76. At all relevant times, Defendants failed to take prompt, adequate or effective action to stop age-related discrimination, harassment and retaliation after Plaintiff notified them of such conduct in good faith.

77. At all relevant times, Defendants, by and through their employee and agents, including Kleiner, perpetuated and condoned discriminatory, harassing and retaliatory conduct through their failure to discipline and/or correct unlawful behavior after receiving multiple complaints.

78. At all relevant times, Defendants, by and through their employees and agents, including Kleiner and Cunningham, colluded in their discrimination and pursuit of managing Plaintiff out of her role because of her age and her reports of unlawful conduct.

79. Plaintiff would not have been subject to harassment, hostile work environment, retaliation and discrimination leading to her termination but for her age.

80. As a direct and proximate result of Defendants' unlawful conduct as described herein, Plaintiff suffered and will continue to suffer lost wages, benefits, bonuses, future earning capacity, anxiety, emotional distress, humiliation, embarrassment, loss of enjoyment of life, and other pecuniary and non-pecuniary damages.

81. Defendants' actions were willful, intentional, malicious, and/or taken with reckless indifference to Plaintiff's protected rights, thereby entitling Plaintiff to compensatory damages, punitive damages to the extent available, and all other remedies permitted under the ADEA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants awarding all available relief, including but not limited to back pay, front pay, lost benefits, compensatory damages, punitive damages, attorneys' fees and costs, pre- and post- judgment interest, and such other legal and equitable relief as the Court deems just and proper.

**COUNT II**
Title VII – Civil Rights Act
Discrimination, Harassment, Hostile Work Environment, and Retaliation
Plaintiff v. All Defendants

82. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth fully at length.

83. Plaintiff is a black, non-Jewish female who, at all relevant times, was an employee of Defendants within the meaning of the Civil Rights Act.

84. Plaintiff is a member of protected classes under the Civil Rights Act as a black, non-Jewish female.

85. At all relevant times, Defendants were "employers" within the meaning of the Civil Rights Act.

86. At all relevant times Plaintiff was qualified and demonstrated a ten-year history of success in her role as Director of Human Resources.

87. Plaintiff was subjected to discriminatory, retaliatory, harassing and hostile work environment from April 2024 until her termination on February 13, 2025, due to her sex, religion, race and in retaliation for reporting unlawful conduct.

88. Defendants, by and through their employees and agents, including Kleiner and Cunningham, discriminated against Plaintiff because of her sex, religion and race and because she reported unlawful conduct in violation of the Civil Rights Act by:

a.  undermining Plaintiff's position as Director of Human Resources;

b.  directing staff to report human resources issues to Cunningham and Kleiner and not to Plaintiff;

c.  spreading rumors to tarnish Plaintiff's reputation and foster distrust of Plaintiff among staff members;

d.  Manufacturing and spreading false accusations about Plaintiff's integrity and performance, undermining her authority and ability to do her job;

e.  Ignoring Plaintiff's reports of unlawful conduct within Aventura Pembrooke;

f.  Retaliating against Plaintiff for making reports of unlawful conduct within Aventura Pembrooke;

g.  Hiring young, inexperienced individuals from within Defendants' own religion and culture into leadership roles who were unqualified and unlikely to recognize and report unlawful conduct to allow greater corporate control over staffing and operations;

h.  Speaking to Plaintiff in a dismissive and demeaning manner;

i.  Causing Plaintiff to fear for her job and reputation;

j.  Failing to support Plaintiff in her role as Director of Human Resources.

k.  Retaliating against Plaintiff for reporting a suspected violations of the PHRA, including reporting allegations of discrimination and harassment based on sex by numerous staff members against Cunningham;

l.  Subjecting Plaintiff to objectively severe and pervasive harassing treatment and hostile work conditions because of her sex, religion and race;

m.  Requiring Plaintiff, under threat of termination or other discipline, to issue unnecessary and excessive disciplinary action against staff, including written warnings for minor infractions, to turn staff against Plaintiff and to coerce staff into supporting and participating in Defendant's unlawful discrimination against and harassment of Plaintiff because of her sex, religion and race;

n.  Telling staff that management was "working on getting her [Plaintiff's] ass outta there"; and

o.  Terminating Plaintiff's employment based on pretextual allegations.

89.  Plaintiff engaged in protected conduct by reporting numerous discriminatory, harassing and hostile work environment complaints she received from staff against Cunningham to her supervisor, Kleiner, including:

a.  Amanda Lyons', a scheduler at Aventura Pembrooke, reports of harassment by Cunningham because of her sex and perceived interest in a male employee with whom Cunningham was romantically involved;

b.  Allegation that Cunningham reported a female nurse, Kayla, to the nursing licensing board for an unsubstantiated narcotics violation because Kayla began a relationship with the maintenance director at Aventura Pembrooke, a man with whom Cunningham was romantically involved;

c.  Tyrone – Food Services – reports of harassment by Cunningham involving fabricated allegations of drinking on the job in retaliation for a disagreement with Cunningham; and

d.  Allegations from multiple employees that Cunningham was engaging in sexual relations with multiple male employees during working hours.

90.   Plaintiff further engaged in protected conduct by notifying Kleiner of her intention to file a complaint against Cunningham for unlawful conduct against Plaintiff and other employees at Aventura Pembrooke.

91.   Defendants by and through its employees, including Kleiner and Cunningham, purposefully retaliated against Plaintiff because she reported unlawful conduct.

92.   Immediately after Plaintiff reported discriminatory conduct to Kleiner, he retaliated and further discriminated against her by:

   a.   Significantly increasing scrutiny over her work;

   b.   Harassing Plaintiff with threats of disciplinary action and termination;

   c.   Subjecting Plaintiff to extreme, hostile working conditions;

   d.   Telling staff that management was "working on getting her [Plaintiff's] ass outta there";

   e.   Excluding her from staff Human Resources matters that were her responsibility, including granting staff raises without Plaintiff's knowledge and disciplining staff without Plaintiff's knowledge or consultation;

   f.   Withholding resources necessary for Plaintiff to do her job;

   g.   Excluding Plaintiff from meetings and issues germane to her position as Director of Human Resources;

   h.   Falsely and maliciously reporting Plaintiff to Zucker and Aventura's corporate office for fraudulently paying bonuses to employees and stealing from the company when those bonuses were historically part of contractual, Union-based compensation;

   i.   Colluding with Cunningham to intimidate Plaintiff into quitting;

      j.   Colluding with Cunningham to fabricate pretextual issues with Plaintiff's performance to justify termination; and

      k.   Terminating Plaintiff's employment based on pretextual allegations.

93.   The retaliation was proximate to and caused by Plaintiff's reports to Kleiner of Cunningham's unlawful conduct.

94.   Plaintiff's termination was proximate to and caused by Plaintiff's reports of unlawful conduct and her notification to Kleiner of her intent to file a complaint against Cunningham of unlawful conduct.

95.   Discrimination based on sex, religion and race were motivating factors in Defendants' unlawful retaliation and ultimate termination of Plaintiff.

96.   Had Plaintiff been a white, Jewish male making the same reports of unlawful conduct she would not have been subject to discrimination, harassment and retaliation.

97.   Defendants, by and through their employees, including Kleiner and Cunningham, purposefully retaliated against Plaintiff with severe and pervasive harassment to intimidate her into resigning.

98.   Defendants' discriminatory, harassing and retaliatory conduct against Plaintiff was because she is a black, non-Jewish female.

99.   The reasons Defendant has cited to justify Plaintiff's termination were false, pretextual and intentionally designed to support Plaintiff's sudden termination after she began reporting her own and other employee complaints regarding Cunningham's unlawful conduct.

100.    The proximal timeline of Plaintiff's employment and events after Plaintiff began complaining of discriminatory, harassing and retaliatory creates the inference of pretext and retaliation as follows:

a.  October 14, 2014 – Begins employment as Director of Human Resources at Aventura Pembrooke;

b.  Plaintiff enjoyed over ten years of success in her position as Director of HR at Aventura Pembrooke without disciplinary record, except a retaliatory warning issued by Aventura for Plaintiff's truthful testimony in the case of Greenidge vs. Aventura in 2021/2022;

c.  Summer/Fall 2018 – Plaintiff successfully led the Acquisition;

d.  December 2018 – Aventura Health Group buys Aventura Pembrooke;

e.  October 2014 – April 2024 – 20+ Administrator changes and 15+ Director of Nursing changes at Aventura Pembrooke;

f.  April 2024 – Cunningham hired as Director of Nursing of Aventura Pembrooke;

g.  December 2024 – Kleiner hired as Administrator of Aventura Pembrooke;

h.   April 2024 – January 2025 – Plaintiff receives numerous reports from staff of Cunningham's unlawful conduct and experiences her own harassment and discrimination from Cunningham;

i.  December 2024 – February 2025 – Plaintiff makes numerous reports to Kleiner of allegations from employees and herself of Cunningham's unlawful conduct;

j.  February 6, 2025, Plaintiff advises Kleiner she intends to file a complaint against Cunningham for her unlawful conduct; and

    k.   February 13, 2025, Kleiner fires Plaintiff stating: "I've been here for thirty (30) days, and you don't get along with nursing, so I have to fire you."

101.    Defendants' actions by and through their employees, Kleiner and Cunningham, were intentional, willful, malicious, and/or taken with reckless indifference to Plaintiff's statutorily protected rights.

102.    Kleiner served as Plaintiff's boss for just over thirty (30) days when he terminated her without cause and despite her successful ten-year career at Adventure Pembrooke, leading to the strong inference that his reasons for termination were pretextual and the motivating factors for Plaintiff's termination was really based on sex, religion and race and in retaliations for her reports of unlawful conduct.

103.    Defendants' intent and objective, by and through their employee and agent, Kleiner's actions, focused on intimidating and preventing Plaintiff from pursuing complaints of pervasive, discriminatory, harassing and unlawful behavior, not protecting Plaintiff and the staff at Aventura Pembrooke.

104.    At all relevant times, Defendants, by and through their employees and agents, including Kleiner, were or should have been aware of complaints of unlawful conduct through repeated reports by Plaintiff and other employees.

105.    At all relevant times, Defendants failed to take prompt, adequate or effective action to prevent discrimination against Plaintiff because of her sex, religion and race.

106.    At all relevant times, Defendants failed to take prompt, adequate or effective action to stop discrimination, harassment and retaliation after Plaintiff notified them of such unlawful conduct in good faith.

107. As a direct and proximate result of Defendants' unlawful conduct and retaliation as described herein, Plaintiff suffered and will continue to suffer lost wages, benefits, bonuses, future earning capacity, anxiety, emotional distress, humiliation, embarrassment, loss of enjoyment of life, and other pecuniary and non-pecuniary damages.

108. Defendants' actions were willful, intentional, malicious, and/or taken with reckless indifference to Plaintiff's protected rights, thereby entitling Plaintiff to compensatory damages, punitive damages to the extent available, and all other remedies permitted under the Civil Rights Act.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants awarding all available relief, including but not limited to: back pay, front pay, lost benefits, compensatory damages, punitive damages, attorneys' fees and costs, pre- and post- judgment interest, and such other legal and equitable relief as the Court deems just and proper.

**COUNT III**
PHRA – 43 P.S. § 955 *et al*
Discrimination, Harassment, Hostile Work Environment, Retaliation and
Aiding and Abetting Discrimination
Plaintiff v. All Defendants

109. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth fully at length.

110. Plaintiff is a member of protected classes under the PHRA as a black, non-Jewish female.

111. Plaintiff was at all relevant times an employee of Defendants within the meaning of PHRA.

112. At all relevant times, Defendants were "employers" within the meaning of the PHRA.

113.    Plaintiff was subjected to discriminatory, retaliatory, harassing and hostile work environment from April 2024 until her termination on February 13, 2025, due to sex, religion, race and for reporting unlawful conduct.

114.    Defendants, by and through their employees and agents, including Kleiner and Cunningham, discriminated against Plaintiff because of sex, religion and race and because she reported unlawful conduct in violation of the PHRA by:

    a.    undermining Plaintiff's position as Director of Human Resources;

    b.    directing staff to report human resources issues to Cunningham and Kleiner and not to Plaintiff;

    c.    spreading false rumors to tarnish Plaintiff's reputation and foster distrust of Plaintiff among staff members;

    d.    Manufacturing and spreading false accusations about Plaintiff's integrity and performance, undermining her authority and ability to do her job;

    e.    Ignoring Plaintiff's reports of unlawful conduct within Aventura Pembrooke;

    f.    Retaliating against Plaintiff for making reports of unlawful conduct within Aventura Pembrooke;

    g.    Hiring young, inexperienced individuals from within Defendants' own religion and culture into leadership roles who were unqualified and unlikely to recognize and report unlawful conduct to allow greater corporate control over staffing and operations;

    h.    Speaking to Plaintiff in a dismissive and demeaning manner;

    i.    Causing Plaintiff to fear for her job and reputation;

    j.    Failing to support Plaintiff in her role as Director of Human Resources;

k.  Retaliating against Plaintiff for reporting a suspected violation of the PHRA, including reporting allegations of discrimination and harassment based on sex by numerous staff members against Cunningham;

l.  Subjecting Plaintiff to objectively severe and pervasive harassing treatment and hostile work conditions because of sex, religion and race;

m.  Requiring Plaintiff, under the threat of termination or other discipline, to issue unnecessary and excessive disciplinary action against staff, including written warnings for minor infractions, to turn staff against Plaintiff and to coerce staff into supporting and participating in Defendant's unlawful discrimination against and harassment of Plaintiff because of sex, religion and race;

n.  Telling staff that management was "working on getting her [Plaintiff's] ass outta there"; and

o.  Terminating Plaintiff's employment based on pretextual allegations.

115.  Plaintiff engaged in protected conduct by reporting numerous discriminatory, harassing and hostile work environment complaints she received from staff against Cunningham to her supervisor, Kleiner, including:

a.  Amanda Lyons', a scheduler at Aventura Pembrooke, reports of harassment by Cunningham because of her sex and perceived interest in a male employee with whom Cunningham was romantically involved;

b.  Allegation that Cunningham reported a female nurse, Kayla, to the nursing licensing board for an unsubstantiated narcotics violation because Kayla began a relationship with the maintenance director at Aventura Pembrooke, a man with whom Cunningham was romantically involved;

24

    c.   Tyrone – Food Services – reports of harassment by Cunningham involving fabricated allegations of drinking on the job in retaliation for a disagreement with Cunningham; and

    d.   Allegations from multiple employees that Cunningham was engaging in sexual relations with multiple male employees during working hours.

116. Plaintiff further engaged in protected conduct by notifying Kleiner of Plaintiff's intention to file a complaint against Cunningham for unlawful conduct against her and other employees of Aventura Pembrooke.

117. Defendants by and through its employees, including Kleiner and Cunningham, purposefully retaliated against Plaintiff because she reported unlawful conduct.

118. Immediately after Plaintiff reported discriminatory conduct to Kleiner, he retaliated against her by:

    a.   Significantly increasing scrutiny over her work;

    b.   Harassing Plaintiff with threats of disciplinary action and termination;

    c.   Subjecting Plaintiff to extreme, hostile working conditions;

    d.   Telling staff that management was "working on getting her [Plaintiff's] ass outta there";

    e.   Excluding her from staff Human Resources matters that were her responsibility, including granting staff raises without Plaintiff's knowledge and disciplining staff without Plaintiff's knowledge or consultation;

    f.   Withholding resources necessary for Plaintiff to do her job;

    g.   Excluding Plaintiff from meetings and issues germane to her position as Director of Human Resources;

    h.  Falsely and maliciously reporting Plaintiff to Zucker and Aventura's corporate office for fraudulently paying bonuses to employees and stealing from the company when those bonuses were historically part of contractual, Union-based compensation;

    i.  Colluding with Cunningham to intimidate Plaintiff into quitting;

    j.  Colluding with Cunningham to fabricate pretextual issues with Plaintiff's performance to justify termination; and

    k.  Terminating Plaintiff's employment based on pretextual allegations.

119.  The retaliation was proximate to and caused by Plaintiff's reports to Kleiner of Cunningham's unlawful conduct.

120.  Plaintiff's termination was proximate to and caused by Plaintiff's notification to Kleiner of her intent to file a complaint against Cunningham of unlawful conduct.

121.  Defendants, by and through their employees, including Kleiner and Cunningham, purposefully retaliated against Plaintiff with severe and pervasive harassment to intimidate her into resigning.

122.  Defendants' discriminatory, harassing and retaliatory conduct against Plaintiff was because she is a black, non-Jewish female.

123.  The reasons Defendants cite to justify Plaintiff's termination are false, pretextual, and designed to support Plaintiff's sudden termination after she began reporting her own and other employee complaints regarding discrimination, harassment, retaliation and Cunningham's unlawful conduct.

124.  Plaintiff's sex, religion and race were motivating factors in Defendants' unlawful retaliation and ultimate termination of Plaintiff.

125.  The proximal timeline of events after Plaintiff began complaining of discriminatory, harassing and retaliatory conduct creates the inference of pretext and retaliation as follows:

a.  October 14, 2014 – Plaintiff begins employment as Director of Human Resources at Aventura Pembrooke;

b.  Plaintiff enjoyed over ten years of success in her position as Director of HR at Aventura Pembrooke without disciplinary record except a retaliatory warning issued by Aventura for Plaintiff's truthful testimony in the case of Greenidge vs. Aventura in 2021/2022;

c.  Summer/Fall 2018 – Plaintiff successfully led the Acquisition;

d.  December 2018 – Aventura Health Group buys Aventura Pembrooke;

e.  October 2014 – April 2024 – 20+ Administrator changes and 15+ Director of Nursing changes at Aventura Pembrooke;

f.  April 2024 – Cunningham hired as Director of Nursing of Aventura Pembrooke;

g.  December 2024 – Kleiner hired as Administrator of Aventura Pembrooke;

h.   April 2024 – January 2025 – Plaintiff receives numerous reports from staff of Cunningham's unlawful conduct and experiences her own harassment and discrimination from Cunningham;

i.  December 2024 – February 2025 – Plaintiff makes numerous reports to Kleiner of allegations from employees and herself of Cunningham's unlawful conduct;

j.  February 6, 2025, Plaintiff advises Kleiner she intends to file a complaint against Cunningham for her unlawful conduct; and

    k.   February 13, 2025, Kleiner fires Plaintiff stating: "I've been here for thirty (30) days, and you don't get along with nursing, so I have to fire you."

126.   Defendants aided, abetted, incited, compelled, and/or coerced unlawful discriminatory practices in violation of 43 P.S. § 955(e) by:

    a.   engaging in discriminatory, harassing and retaliatory conduct against Plaintiff because of age, sex, religion and race as described herein;

    b.   Using its authority to enforce, escalate, or perpetuate discriminatory treatment of Plaintiff because of age, sex, religion and race as described herein;

    c.   Colluding with and aiding and abetting employees of Defendants, including Kleiner and Cunningham, to enforce, escalate and perpetuate discriminatory treatment against Plaintiff because of age, sex, religion and race as described herein;

    d.   Colluding with and aiding and abetting employees of Defendants, including Kleiner and Cunningham to enforce policy and procedures in a disparate and discriminatory manner against Plaintiff because of age, sex, religion and race as described herein;

    e.   Colluding with and aiding and abetting employees of Defendants, including Kleiner and Cunningham to harass Plaintiff and create a hostile work environment in an effort to intimidate Plaintiff into voluntary resigning because of age, sex, religion and race as described herein and because she reported unlawful activity;

    f.   Colluding with and aiding and abetting employees of Defendants, including Kleiner and Cunningham to create a pretextual disciplinary record against

Plaintiff based on false and unverified facts to justify Plaintiff's termination; and

g.  Participating in and aiding and abetting Defendants employees, including Kleiner and Cunningham, in retaliatory actions against Plaintiff for engaging in protected activity, including perpetuating disciplinary action based on false and unverified facts because she reported unlawful conduct.

127.  Defendants' actions by and through their employees, Kleiner and Cunningham, were intentional, willful, malicious, and/or taken with reckless indifference to Plaintiff's statutorily protected rights.

128.  Kleiner served as Plaintiff's boss for just over thirty (30) days when he terminated her without cause and despite her successful ten-year career at Adventure Pembrooke, leading to the strong inference that his reasons for termination were pretextual and the motivating factor for Plaintiff's termination was really her sex, religion and race.

129.  Defendants' intent and objective, by and through their employee and agent, Kleiner's actions, focused on intimidating and preventing Plaintiff from pursuing discrimination complaints and reporting pervasive, discriminatory, harassing and unlawful behavior, not protecting Plaintiff and the staff at Aventura Pembrooke.

130.  At all relevant times, Defendants, by and through their employees and agents, including Kleiner, were or should have been aware of complaints of unlawful conduct through repeated reports by Plaintiff and other employees.

131.  At all relevant times, Defendants failed to take prompt, adequate or effective action to prevent discrimination against Plaintiff because of her sex, religion and race.

132. At all relevant times, Defendants failed to take prompt, adequate or effective action to stop discrimination, harassment and retaliation after Plaintiff notified them of such unlawful conduct in good faith.

133. As a direct and proximate result of Defendants' unlawful conduct and retaliation as described herein, Plaintiff suffered and will continue to suffer lost wages, benefits, bonuses, future earning capacity, anxiety, emotional distress, humiliation, embarrassment, loss of enjoyment of life, and other pecuniary and non-pecuniary damages.

134. Defendants' actions were willful, intentional, malicious, and/or taken with reckless indifference to Plaintiff's protected rights, thereby entitling Plaintiff to compensatory damages, punitive damages to the extent available, and all other remedies permitted under the PHRA.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants awarding all available relief, including but not limited to back pay, front pay, lost benefits, compensatory damages, punitive damages, attorneys' fees and costs, pre- and post- judgment interest, and such other legal and equitable relief as the Court deems just and proper.

BIGHAM LAW, PLLC

By: Edward Bigham
Edward Bigham, Esq.
Attorney for Plaintiff
206 North Main Street
Souderton, PA  18964
267-373-0019
I.D. No. 79321